JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLA SHELBY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TWO JINNS, INC. DBA ALADDIN BAIL BONDS,<br>    Defendant. | Case No.  CV 15-03794-AB (GJSx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, MOTION FOR ATTORNEYS' FEES** |

   Plaintiff Gayla Shelby filed this putative class action lawsuit on May 20, 2015, alleging Defendant Aladdin Bail Bonds violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") by debiting Class members' bank accounts without written authorization for the fund transfer.  (Dkt. No. 1, Complaint ("Compl.") ¶ 2.) On September 6, 2016, Plaintiff notified the Court the parties had reached a settlement (Dkt. No. 24), and on February 8, 2017, the Court preliminarily approved the Settlement Agreement.  (Dkt. No. 32.)

1

Plaintiff now moves the Court for class certification and final approval of the Settlement Agreement and for an award of attorneys' fees.  (Dkt. Nos. 35, 37.) Having considered the parties' submissions and with the benefit of oral argument, the Court **GRANTS** class certification and final approval.  The Court also **GRANTS** Plaintiff's motion for attorneys' fees.

## I.   BACKGROUND

Plaintiff alleges Defendant, through its agents, contacted Plaintiff in June 2014 about a debt purportedly owed pursuant to a written agreement entered between the parties two years prior.  (Compl. ¶¶ 9-10.)  Plaintiff provided her debit card number to Defendant, who subsequently withdrew a monthly charge from her account.  Plaintiff alleges Defendant did not inform her that "her financial information would be retained for future automatic payments."  (*Id*. at ¶¶ 12-13.)  Plaintiff noticed these monthly charges and after some investigation, learned Defendant's withdrawals were put toward the debt owed under the written agreement.  (*Id*. at ¶¶ 14-15.)  These withdrawals eventually caused an overdraft, for which Plaintiff incurred additional fees from her bank.  (*Id*. at ¶ 16.)  Plaintiff contacted the bank to stop the automatic payments.  (*Id*. at ¶ 17.)

Plaintiff filed suit on May 20, 2015, alleging Defendant engaged in a similar practice as to all Class members, entering into agreement for recurring electronic payments to be paid from personal accounts without obtaining written authorization, which Plaintiff contends violates the EFTA.  (*Id*. at ¶ 27.)  After exchanging discovery, the parties participated in mediation with the Honorable Leo S. Papas, Ret., of Judicate West during which time the parties reached a settlement.  (Dkt. No. 37-2, Declaration of Todd M. Friedman in Support of Motion for Final Approval ("Friedman Decl. II") ¶¶ 7-8.)  The Court granted preliminary approval of the Settlement on February 8, 2017 (Dkt. No. 32), and held a fairness hearing on June 26, 2017.  (Dkt. No. 39.)

1
2
3
4
5
6
7
8
9
10

The key provisions of the Settlement Agreement are as follows.  The class is defined as "all individuals in the United States for whom Defendant initiated recurring electronic funds transfer from a debit card account or bank account number, without first providing a copy of a written authorization, between May 20, 2014, and the effective date of this settlement[.]"  (Dkt. No. 26-5, Declaration of Todd M. Friedman in Support of Motion for Preliminary Approval ("Friedman Decl. I"), Exh. A, Settlement Agreement ("SA") § 2.07.)  Excluded from the Class are "any employees of Aladdin, its parents, affiliates, or subsidiaries; the Judge or Magistrate Judge to whom the Action is assigned; and, any member of those Judges' staffs or immediate families."  (*Id*.)

11
12
13
14
15
16
17

The Settlement Agreement provides that Defendant will pay $457,000 to a common fund to be distributed on a pro rata basis to Class members after deducting attorneys' fees, costs, and an incentive payment for the named Plaintiff.  Defendant would have "no reversionary interest in any portion of the Common Fund, and any unclaimed portion of the Common Fund, as well as any sums allocated to settlement checks that have not been cashed within 180 days of issuance, shall be paid to one or more *cy pres* recipients[.]"  (*Id*. at § 5.01.)

18
19
20
21

The attorneys' fees award would not exceed 25% of the Settlement Fund, litigation costs would not exceed $5,000, administration costs would not exceed $45,000, and the incentive award would amount to $2,500.  (*Id*. at §§ 6.01-6.02, 8.02.)  The remaining $290,000 would be distributed to Class members.

22
23
24
25
26
27

Class members would be automatically identified by Defendant's records and included as participating in the settlement unless they filed an opt-out notice.  (*Id*. at § 10.02.)  Class members with no outstanding balance owed to Defendant, or owing less than $100, would receive their pro rata share in the form of a check.  (*Id*. at § 5.03.)  Those owing Defendant $100 or more would receive their share in the form of  a credit to their account.  (*Id*. at § 5.04.)  The parties initially identified approximately

28

17, 300 Class members, but in the course of providing notice discovered Defendant had duplicate records and that the number of Class members actually amounted to 13,191.  (Friedman Decl. II ¶ 19.)

The Claims Administrator, KCC Class Action Services LLC ("KCC"), provided notice of the Settlement Agreement by direct mail to Class members' addresses maintained by Defendant.  (SA at § 9.02.)  For notices returned as undeliverable, KCC attempted to locate updated addresses and re-mailed the notices.  KCC repeated this remailing process until about 94% of the Class had received the notices by mail.  (Dkt. No. 38, Amended Declaration of Marc Wall in Support of Plaintiff's Motion for Final Approval ("Wall Decl.") ¶¶ 6-7.)  Notice was also available at the settlement website, twojinnclassaction.com, and KCC also established an interactive automated phone line to accommodate inquiries from Class members.  (*Id.* at ¶¶ 8-9.)  In any event, even members who did not receive notice are still eligible to receive settlement payments since payment is automatic and no claim form is required.  (Friedman Decl. II ¶ 27.)

Defendant filed a notice of CAFA compliance on March 22, 2017 (Dkt. No. 34), and indicated at the fairness hearing that none of the state or federal authorities notified objected to the terms of the Settlement Agreement.  No Class members objected to or opted out of the Settlement Agreement during the notice period or at the fairness hearing.  (Wall Decl. ¶ 10.)

## II.   DISCUSSION

Final approval of a class action settlement involves two steps.  "First, the district court must assess whether a class exists; "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Staton v. Boeing*, 327 F.3d 938, 952 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Next, the district court determines "whether a

proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  When the parties enter into a settlement agreement before class certification, courts "must pay 'undiluted, even heightened attention' to class certification requirements. . . ." *Staton*, 327 F.3d at 953 (citing *Amchem*, 521 U.S. at 620) (citation omitted).  The Court must also determine whether the attorneys' fees, litigation costs, and settlement administration costs are fair and reasonable in relation to the settlement agreement.  *Knisley v. Network Assocs.,* 312 F.3d 1123, 1126 (9th Cir. 2002).  Thus, the Court must ensure that the award is reasonable, even if both parties agreed to a specified amount in the settlement agreement.  *In re Bluetooth Prods. Liability Litig*., 654 F.3d at 941 (9th Cir. 2011); *see also Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328-29 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.")

## A. CLASS CERTIFICATION

### 1. RULE 23(A)

A class action may proceed only if it meets the four Rule 23(a) prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In preliminarily approving the Settlement Agreement, the Court previously found these requirements were met.  (*See* Dkt. No. 32.)  Evaluating them again for purposes of final approval, the Court finds each prerequisite is satisfied here.

### a. Numerosity

"[T]here is no specific number requirement to establish that joinder of all members is 'impracticable,'" *Klee v. Nissan N. Am., Inc.*, No. CV-12-08238-AWT-PJWX, 2015 WL 4538426, at *3 (C.D. Cal. July 7, 2015), *aff'd* (Dec. 9, 2015)

(citation omitted), but it is clearly so here: 13,191 individuals comprise the Class. (Friedman Decl. II ¶ 19.)  The numerosity requirement is therefore met in this case.

### b. Commonality

Claims of class members are sufficiently common if they share questions of fact and law.  Fed. R. Civ. P. 23(a)(2).  Courts have construed this prerequisite permissively, finding it satisfied where there are "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  The same facts support each Class member's claim—namely, that Defendant withdrew funds from their bank accounts without written authorization.  And whether these withdrawals violated the EFTA is a legal issue common to all Class members' claims.  Specifically the questions of law and fact include:

> a. The members of the Class entered into agreements with Defendant to have automatic, or recurring, electronic payments drawn from their personal accounts to be paid to Defendants towards settlement of the Class members' alleges [sic] services received by Defendants.
> b. The members of the Class were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments.
> c. Defendants did not request, nor did it provide, Class members with written agreements memorializing the automatic or recurring electronic payments.
> d. The members of the Class did not provide either a written ("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments.
> e. Despite [Class members] not providing written or electronic authorizations for payments to be drawn from their accounts, Defendants took unauthorized payments from Class members' accounts.

(*See* Compl. ¶¶ 23, 27; Dkt. No. 26, Motion for Preliminary Approval at 21.)  Because all Class members were subject to the same practices of Defendant, and thus sustained the same alleged EFTA violations, the commonality requirement is satisfied.

1

### c.  Typicality

2   "[T]he commonality and typicality requirements of Rule 23(a) tend to merge."

3   *Staton*, 327 F.3d at 957 (citing *General Telephone Co. of the Southwest v. Falcon*, 457

4   U.S. 147, 157 n.13 (1982).  "The test of typicality is whether other members have the

5   same or similar injury, whether the action is based on conduct which is not unique to

6   the named plaintiffs, and whether other class members have been injured by the same

7   course of conduct."  *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491 (N.D. Cal.

8   2011) (citation omitted).  As stated above, the Complaint alleges Class members,

9   including Plaintiff, were subjected to identical practices which resulted in the same

10   statutory injury.  Plaintiff's asserted injury, then, is typical of the Class, and the Court

11   finds this requirement is satisfied.

12

### d.  Adequacy of Representation

13   Finally, to satisfy Rule 23 the named Plaintiff must "fairly and adequately

14   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional

15   due process concerns, absent class members must be afforded adequate representation

16   before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  Courts

17   determine adequacy in light of two questions: "(1) do the named plaintiffs and their

18   counsel have any conflicts of interest with other class members and (2) will the named

19   plaintiffs and their counsel prosecute the action vigorously on behalf of the class."  *Id.*

20   It is not apparent that there are conflicts between Class counsel, Plaintiff, and

21   Class members, and no Class members have objected to the Settlement.  (Friedman

22   Decl. II ¶¶ 29-32.)  It also appears counsel has vigorously pursued this case, engaging

23   in discovery and mediation to reach a resolution early in the litigation.  (*Id.* at ¶ 8.)

24   The record also establishes Class counsel is experienced and qualified, having

25   litigated over sixty class actions.  (Friedman Decl. I ¶ 49.)  Accordingly, the Court

26   finds Plaintiff and Class counsel fairly and adequately protect the interests of the

27   Class.

28

## 2.  RULE 23(B)

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)."  *Hanlon*, 150 F.3d at 1022.  Plaintiff proceeds under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

Plaintiff asserts the Class is "sufficiently cohesive to warrant adjudication by representation" under Rule 23(b)(3).  (Mot. for Preliminary Approval at 23 (citing *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).)  The Court agrees.  Common factual and legal issues predominate because the single claim at issue here depends on Defendant's electronic withdrawal of funds from Class members' accounts, and whether the EFTA permits that conduct.

Rule 23(b)(3) also directs courts to consider whether class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."  Courts consider the following factors to make this determination:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The Court finds none of these factors weighs against class resolution of this

case.  There are few, if any, individual interests since the conduct at issue uniformly affected Class members.  Further, considering the lack of actual damages and the EFTA's cap on statutory damages, class resolution allows Class members to litigate claims that would otherwise be uneconomical to pursue separately.  *See Las Vegas Sands*, 244 F.3d at 1163.  And no Class member has come forward to object, opt out, or otherwise state a preference to litigate the claim individually, or that any other litigation is currently underway.  Accordingly, the Court concludes this case satisfies Rule 23(b)(3)'s superiority requirement.

### 3.  RULE 23(C)

For classes certified under Rule 23(b)(3), Rule 23(c) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*.

The Court previously approved the proposed form and content of Class notice and the method for giving notice provided in the motion for preliminary approval. (Mot. for Preliminary Approval at 25; Friedman Decl. I ¶¶ 22-23, Exs. B, C, D.)  With this approval, the Claims Administrator, KCC, mailed a single summary postcard to all 13,191 identified Class members.  (Wall Decl. ¶¶ 4-5, 8.)  Of the postcards mailed, 2,788 were returned as undeliverable, and of these, KCC located updated addresses

for 2,050 Class members.  Overall, "KCC estimates that the direct notice effort reached approximately 94.41% of the Settlement Class Members." (*Id.* at ¶ 7.)  KCC also set up a website, phone line, and P.O. Box to field inquiries from and provide additional information to Class members.  (*Id.* at ¶ 9.)

Complying with the Class Action Fairness Act, Defendant "provided individualized notices of the proposed class action settlement" to the Attorneys General of each state, the District of Columbia, and the United States.  (Dkt. No. 34.)

The Court finds that the notice given was reasonably calculated to notify Class members of the proposed settlement under Rule 23(c).  Furthermore, having found the proposed Class also satisfies Rules 23(a) and 23(b)(3), the Court **GRANTS** Plaintiff's motion for class certification for purposes of final approval of the settlement.

### B. FAIRNESS, ADEQUACY, REASONABLENESS

A class action settlement may be approved "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To determine this, courts consider the following *Churchill* factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 316165, at *7 (N.D. Cal. Jan. 23, 2017) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

In addition, pre-class certification settlements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d 935, 946 (citing *Hanlon*, 150 F.3d at 1026).  Collusion may be

evidenced by the following *Bluetooth* factors: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*. at 947.

### 1. *Churchill* Factors

### a. Strength of Plaintiff's Case

As to the first factor, "[a]pproval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 7571789, at *8 (N.D. Cal. Nov. 25, 2015). The central dispute in this case is whether maintaining recorded phone calls satisfies the written authorization requirement of the EFTA. (Dkt. No. 37-1, Motion for Final Approval of Class Action Settlement at 16.) Defendant maintains the Consumer Financial Protection Bureau's latest compliance bulletin permits these recorded telephone authorizations. That bulletin explains that the regulation at issue "may be satisfied if a consumer authorizes preauthorized EFT . . . [and] the company records and retains the consumer's oral authorization . . . provided the consumer intends to sign the record as required by the E-Sign Act." (*Id.*) Considering that Defendant keeps these recorded phone calls, it seems—and Plaintiff concedes— Defendant has a viable defense to Plaintiff's claims. Considering this potential obstacle, the first factor favors settlement.

### b. Risks of Further Litigation

The parties contest liability here, and any potential merit to Plaintiff's claims are balanced by the "risk, expense, and . . . the likely duration of further litigation."

*Volkswagen*, 2017 WL 316165, at *8.  The parties reached a settlement early in the action, and given Defendant's potential defenses, the expenses that would inevitably be incurred with further litigation, and the cap on statutory damages recoverable under the EFTA, the Court finds this factor weighs in favor of settlement.

### c.   Risks of Maintaining Class Status Through Trial

Though the Court has granted class certification for purposes of settlement, there is always the possibility the Court could later de-certify the class.  But this is true with any class action settlement, and as a result, the Court finds this factor to be neutral in balancing the *Churchill* factors.

### d.   Settlement Amount

This factor, "the most important variable in assessing a class settlement," favors final approval.  *Volkswagen*, 2017 WL 316165, at *9.  The EFTA limits statutory damages to $500,000 or 1% of the net worth of the defendant in class actions, whichever is less.  15 U.S.C. §1693m(a)(2)(B).  In this case, Defendant is valued at $25 million, so the maximum recovery for Class members would be $250,000.  After attorneys' fees and costs are deducted from the Settlement Fund, $290,000 remains to be distributed to Class Members, a result that would not be achievable if the case went to trial.  (*See* Mot. for Final Approval at 18.)  Considering that Class members' pro rata recovery of statutory damages exceeds the EFTA's cap, even after deducting fees and costs, the Court finds this factor favors final approval.

### e.   Extent of Discovery Completed

"Where the parties have conducted extensive discovery, this factor favors final approval because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-02488 BRO (SHX), 2015 WL 12731932, at *24 (C.D. Cal. May 14, 2015), *reconsideration denied,* No.

CV1302488BROSHX, 2015 WL 12745798 (C.D. Cal. Aug. 18, 2015) (quotations and citations omitted).  Here, the parties engaged in several months of discovery and participated in a full-day mediation session.  (Mot. for Final Approval at 21-22.)  Fact discovery was relatively straightforward, requiring a determination of how many parties were subject to the authorization policy at issue and the net worth of Defendant.  The remaining disputes were legal in nature, allowing the parties to have informed negotiations regarding settlement.  (*Id.* at 22.)  Considering the few issues and relative lack of complexity of this case, the Court finds the parties had engaged in sufficient discovery to make informed settlement decisions.

### f.   Experience of Counsel

Class counsel's recommendations are presumed reasonable because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citation omitted).  Here, Class counsel has considerable experience litigating consumer class actions (Friedman Decl. I ¶ 53), including sixteen in the last three years.  (Dkt. No. 35-2, Declaration of Todd M. Friedman in Support of Plaintiff's Motion for Fees and Costs ("Friedman Decl. III") ¶ 16.)  Given this experience and counsel's support for the settlement, the Court finds this factor favors final approval.

### g.   Government Participant

This factor also favors final approval.  Defendant provided notice to the Attorneys General of all 50 states, the District of Columbia, and the United States in accordance with CAFA, and none objected.  (*See* Dkt. No. 34.)  There is no government participant in this case that would disfavor final approval.

### h.   Class Reaction to Settlement

No Class member has opted out or objected to the settlement.  (Friedman Decl. II ¶¶ 29-32.)  "A court may appropriately infer that a class action settlement is fair,

adequate, and reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014). Moreover, Class counsel's office "received an estimated 200 phone calls from Class Members . . . .  Not a single Class Member who contacted [the] office expressed any negative sentiments about the Settlement . . . .  The response was overwhelmingly positive." (Friedman Decl. II ¶ 30.)  This factor favors final approval.

### 2. *Bluetooth* Factors

None of the *Bluetooth* factors are present such that there is any indication of collusion here.  First, Class counsel seeks 25% percent of the Settlement Fund for attorneys' fees, a figure the Ninth Circuit has held to be reasonable.  *Hanlon*, 150 F.3d at 1029.  There is no "clear sailing" agreement because the fees are to be paid from the Class Settlement Fund which will not revert to Defendant.  (SA at § 5.01.)  Class members have been identified from Defendant's own records and will automatically be issued payment of their pro rata share of the fund.  (*Id.* at § 10.02.)  Any funds not paid out due to undeliverable checks or checks not cashed within 180 days of payment will be paid as a *cy pres* award to The Center for Community Solutions.  (*Id.* at § 8.04.)  Based on these factors, the arm's-length negotiations, and the involvement of a respected mediator to reach the settlement, the Court finds no indication of collusion.

Balancing the *Churchill* factors, the Court finds they clearly weigh in favor of finding the settlement is fair, reasonable, and adequate.  The Court also finds no signs of collusions and therefore **GRANTS** final approval of the class action settlement.

### C. ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

A district court may be authorized by law or the parties' agreement to award reasonable attorneys' fees and nontaxable costs in a certified class action.  Fed. R. Civ. P. 23(h).  The Ninth Circuit has approved two methods of determining attorneys' fees in a common fund case: (1) the "lodestar" method  and (2) the "percentage of the fund" method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see*

*also Hanlon*, 150 F.3d at 1029.  In the former, the Court applies a risk multiplier to increase or decrease the fee award based on factors specific to the case, such as the length of the proceedings or the risk involved.  *Staton*, 327 F.3d at 968.  In the latter, the Court awards a percentage of the fund sufficient to provide Class counsel with a reasonable fee.  *Hanlon*, 150 F.3d at 1029.  In the Ninth Circuit, the "benchmark" percentage is 25% of the common fund.  *Id*.

The Court has discretion in common fund cases to apply either method. *Vizcaino*, 290 F.3d at 1047.  However, the ultimate goal is to "reasonably compensate counsel for their efforts in creating the common fund."  *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citations omitted).  In contemplating the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on Class Counsel; and (5) awards made in similar cases."  *Id.*  (citing *Vizcaino*, 290 F.3d at 1048-50).  District courts should apply one method and use the other method to cross-check the appropriateness of the amount.  *See Bluetooth*, 654 F.3d at 944.

Plaintiffs' move for (1) an award of attorneys' fees equal to $114,250, or 25% of the $457,000 total Settlement Fund; (2) reimbursement for Class counsel's costs and expenses equal to $5,000; (3) costs of administration in the amount of $37,411 to the Claims Administrator KCC and (4) an incentive award to Representative Plaintiff in the amount of $2,500.  The Court will address each request in turn.

**1.  Class Counsel's Request for Attorneys' Fees**

**a.  Award of Attorneys' Fees from the Gross Settlement Sum**

Class counsel seeks a percentage method fee award based upon the $457,000 gross settlement sum.  An award of attorneys' fees from a common fund is appropriate only where the Court can: "(1) sufficiently identify the class of beneficiaries; (2)

1   accurately trace the benefits; and (3) shift the fee to those benefitting with some

2   exactitude." *Staton*, 327 F.3d at 972 (citations omitted).  A fee award from the sum is

3   appropriate once each class member has "an undisputed and mathematically

4   ascertainable claim" to a sum recovered on his or her behalf, as opposed to "a general

5   social grievance." *Van Gemert*, 444 U.S. at 479.  Thus, a percentage method fee

6   award based upon the $457,000 gross settlement sum is appropriate so long as the

7   *Staton* criteria are met.

8       The parties have identified a class of approximately 13,191 Class members

9   which satisfies the first criterion.  (Friedman Decl. III ¶ 9.)  Furthermore, the benefits

10  of the Settlement can be accurately traced and the method for apportioning each

11  member's cash payment or credit are both fair and readily calculable.  Class members,

12  identified from Defendant's own records, will automatically be issued payment of

13  their pro rata share of the Common Fund.  (SA at § 10.02.)  Any unpaid funds due to

14  undeliverable checks or checks not cashed within 180 days of payment will be paid to

15  a designated *cy pres* recipient.  (SA at § 8.04.)  This satisfies the *Staton* criteria, and

16  the Court therefore approves Class counsel's request to base the fee award upon the

17  $457,000 gross Settlement sum.

18       **b. Class Counsel's Requested Fee**

19       Next, the Court considers whether Class counsel's request of a fee equal to 25%

20  of the $457,000 gross Settlement Fund ($114,250) is fair and reasonable.  (SA at §

21  6.01.)  This request aligns with the Ninth Circuit's benchmark of 25% with costs and

22  expenses awarded in addition to this amount.  *Hanlon*, 150 F.3d at 1029.  Other

23  relevant factors considered by the Court as to whether the percentage is reasonable

24  include: (1) the results achieved; (2) the risk undertaken by Class counsel in pursuing

25  the case; (3) the market rate for similar representations; and (4) the nature of the

26  representation, including whether it was executed on a contingency basis.  *Vizcaino*,

27  290 F.3d at 1048-50.

28

### i.  The Results Achieved

The overall result and benefit to the Class from the litigation is considered the "most critical" factor in granting a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1933).  Statutory damages for any class action brought under EFTA are capped at 1% of the net worth of the defendant, or an amount no greater than $500,000.  15 U.S.C. 1693m(a)(2)(B).  In this case, the Class members will receive in aggregate more than 1% of the net worth of Defendant's value, after Plaintiff's counsel receives fees and costs and after costs of administration.  Accordingly, the Settlement Agreement provides $457,000 in recovery for the Class.  (SA at § 2.17.)  Every Class member will be entitled to a pro rata distribution of the Settlement Fund with a current estimated recovery of $22.59 per Class member with no need to submit a claim.  (*Id.* at §§ 5.01-5.04.)  This anticipated recovery is in line with other EFTA class action settlements.  *See, e.g.*, *Kinder v. Northwestern Bank*, Case No. 1: 10-cv-405, 2013 WL 1914519 (W.D. Mich. April 15, 2013); *Mazon v. Wells Fargo Bank, N.A.*, 2011 WL 6257149 (D.N.J. Dec. 14, 2011); *Esposito v. Deatrick & Spies, P.S.C.* 2015 WL 390392 (N.D.N.Y. Jan. 28, 2015).  In light of the real and immediate benefit to Class members, the 25% benchmark for attorneys' fees appears appropriate.

### ii.  The Risks of Litigation

When evaluating an award of attorneys' fees, the Court considers whether protracted and contentious litigation could jeopardize the awards for Class members.  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048.  For example, a court may consider the complexity of the legal issues involved and defenses to the merits of the practices by the Defendants.  *Omnivision*, 559 F. Supp. 2d at 1046-47.  In this case, Class counsel contends that an award of 25% of the common fund is appropriate given the defense to the merits of Defendant raised throughout litigation and mediation.  Defendant alleges that the EFTA's written authorization requirement is fulfilled when the phone call is recorded, pursuant to the

recent compliance bulletin issued by CFPB.  *See* CFPB Compliance Bulletin 2015-06

issued November 23, 2015.  The CFPB explained that:

> Regulation E does not prohibit companies from obtaining signed,
> written authorizations [for preauthorized EFTs] from consumers over
> the phone if the E-sign Act requirements for electronic records and
> signatures are met
> …
> Regulation E may be satisfied if a consumer authorizes preauthorized
> EFT…[and] the company records and retains the consumer's oral
> authorization, provided… the consumer intends to sign the record as
> required by the E-Sign Act.

*Id.* at ¶ 2.  While Plaintiff contends that such a provision would not shield Defendant

from liability, it raises a significant risk to the claims at issue.  Given that the

Defendant recorded all authorizations regarding EFT arrangements, the likelihood of

any actual damages from overdraft fees or other similar actual damages appears very

limited, as Plaintiff even concedes.  However, following a day-long mediation, the

parties agreed to a settlement that avoids the risk that Class members might not

recover whilst presenting a fair and reasonable alternative for both parties.  (Friedman

Decl. I ¶¶ 41-46.)  Furthermore, this mediation was overseen by the Honorable Judge

Papas, Ret.  (*Id*. at ¶¶ 10-11.)  The Agreement therefore represents a fair and

reasonable compromise between the parties and further supports an award of

attorneys' fees as requested.

### iii.  The Skill and Quality of Class Counsel's Work

Complex litigation such as national class actions require a unique set of legal

skills and abilities.  *Omnivision*, 559 F. Supp. 2d at 1047.  Class counsel's extensive

experience is demonstrated in numerous EFTA and related consumer class actions, in

which noteworthy recoveries were secured for those classes.  (Friedman Decl. III ¶¶

10-16.)  In light of the initial case investigation and pleadings, the written and

informal mediation discovery as well as Class counsel's participation in a full-day

mediation session negotiating a settlement beneficial to Class members, the Court

finds this factor favors Plaintiff's counsel's fee request.

### iv.  The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel

The public interest is served by encouraging attorneys to represent parties on a contingent basis and subsequently compensating them for the risk of non-payment. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)(noting "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (a premium over the normal hourly rate is paid to successful class counsel for taking the risk of nonpayment).  The contingent nature of the fee and the risk that counsel will not recover has been held to justify the benchmark percentage of 25%, as outlined above. *Omnivision*, 559 F. Supp. 2d at 1047; *Vizcaino,* 290 F.3d at 1050. Furthermore, when cases are taken on a contingency basis and litigation is protracted, the risk of non-payment warrants a significant fee award. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19.

This action was commenced May 20, 2015, and counsel have worked on a contingency basis throughout this litigation for an estimated 178.9 hours.  (Friedman Decl. III at ¶¶ 28-35.)  Plaintiff's counsel received no compensation during this time and advanced approximately $4,903.56 in litigation expenses as of April 10, 2017. (*Id.* at ¶¶ 20-21.)  The Court therefore finds that this case warrants a benchmark award of 25% of the fund.

### c.  The Lodestar Cross-Check

The Court primarily will use the benchmark method to determine attorneys' fees because this case involves a common fund with an easily quantifiable benefit to the class.  However, it will apply a lodestar cross-check to ensure the reasonableness

of the award. *Vizcaino,* 290 F.3d at 1047; *see, e.g., Nwabueze v. AT&T, Inc.,* No. C 09-01529 SI, 2014 WL 324262, at *3 (N.D. Cal. Jan. 29, 2014); *Ontiveros,* 303 F.R.D. 356, 372 (E.D. Cal. 2014). The number of hours the prevailing party expended on the litigation is multiplied by a reasonable hourly rate. *Bluetooth*, 654 F.3d at 941. The figure may be adjusted to reflect a variety of 'reasonableness' factors, including, but not limited to, the level of representation, the benefit obtained for the class, the complexity of the factual and legal issues presented and the risk of nonpayment of the parties. *Id.* at 941-42.

### i. Class Counsel's Lodestar

Courts should only award fees based on the number of hours reasonably expended on the litigation and not hours that are excessive, redundant, or unnecessary. *Hensley,* 461 U.S. at 433-34. In determining a reasonable number of hours, courts have discretion to make an equitable judgment rather than apply a precise rule or formula. *Id.* at 436-37. Once the lodestar is determined, the court divides or multiplies the total fees sought by the lodestar to ascertain a multiplier, the purpose of which is to account for the risk counsel assumes when they take on a contingent-fee case. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013). The following factors are relevant to determine whether or not a multiplier is appropriate: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.*

Applying the lodestar method here, Plaintiff's counsel calculates his attorneys'

1  fees to be $108,387.50, based upon 178.9 working hours at rates between $575 and

2  $675 per hour.  (Friedman Decl. III, Ex. A.)  This represents a multiplier of

3  approximately 1.054, which will likely be less than 1.00 by the time the Settlement is

4  ultimately implemented.  Courts have approved this multiplier as fair and reasonable.

5  *See, e.g., Vizcaino*, 290 F.3d at 1050-51.  Class counsel has adequately demonstrated

6  that claims were prosecuted effectively and efficiently, with efforts made to reduce

7  instances of duplication.  Time records were carefully reviewed such that the attorneys

8  with higher rates only billed time where necessary.  (Friedman Decl. III ¶¶ 28-37.)

9  The Court's careful review of the time billed to this case leads it to conclude the

10  estimated lodestar is reasonable.

### ii.  Class Counsels' Hourly Rates

12          Courts also compare counsel's hourly rates to rates within the community for

13  similar services by lawyers of reasonably comparable skill, experience and reputation

14  to assess their reasonableness.  *Blum v.Stenson*, 465 U.S. 886, 895 n.11(1994).  *See*

15  *also Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992);

16  *Serrano v. Unruh*, 32 Cal.3d 621,643 (1982).  The relevant community is generally

17  the forum in which the district court sits.  *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d

18  973, 979 (9th Cir. 2008).  According to the most recent Laffey Matrix, reasonable

19  rates for a partner of a law firm practicing between 11 and 19 years is $695 per hour.

20  (Friedman Decl. III ¶¶ 22-27, Exs. A and C.)  This is further supported by case law.

21  *See Hartless v. Clorox Co*., 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*,

22  473 F. App'x. 716 (9th Cir. 2012) (approving hourly rates of $675-$795 for partners,

23  up to $410 for associates, and up to $345 for paralegals).  Thus, Class counsel's

24  hourly rates are reasonable and once combined with the hours expended result in a

25  reasonable lodestar of $108,387.50.

26  //

27  //

28

### 2. Class Counsel's Request for Reimbursement of Litigation Costs and Expenses

Litigation costs are ordinarily included in an award of attorneys' fees pursuant to the Fair Labor Standards Act. *Wales v. Jack M. Berry,* Inc., 192 F. Supp. 2d 1313, 1329 (M.D. Fl. 2001). Class counsel requests reimbursement for the $4,903.56 he advanced in litigation costs and expenses which included mediation, court filings, mileage expenses, parking, and postage. (Friedman Decl. III ¶¶ 20-21, Ex. A.) These expenses are typically recoverable. *Odrick v. Union Bancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495 at *6 (N.D. Cal. Dec. 3, 2012)(approving expenses "for a retained expert mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350 DOC, 2012 WL 3151077 at *12 (C.D. Cal. July 31, 2012)("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."). The Court therefore **GRANTS** Plaintiff's request for reimbursement for these costs.

### 3. Class Counsel's Request for Reimbursement of Administrative Costs

Finally, Plaintiff requests reimbursement of $37,411.00 for the cost of paying the Claims Administrator KCC. (Friedman Decl. III ¶ 6.) This payment appears appropriate because without KCC's input, Class members would not have received notice of the settlement, nor would they receive their share of the settlement proceeds. Plaintiff submitted the declaration of Marc Wall, KCC's Special Project Manager, who describes the work that KCC completed in this case. (*See* Dkt. No. 38.) This included notifying members of the class action; providing copies of the Long Form Notice in both English and Spanish on the settlement website; preparing the master mailing list and processing the names and addresses through the National Change of Address database; handling returned undeliverable mail; and setting up and

maintaining the class action website, telephone line and mailing address.  The total cost for the administration of the settlement is estimated to be $37,411.  (Friedman Decl. III, Ex. B.)  Courts regularly award administrative costs associated with providing notice to the class, which must be reasonably incurred for the benefit of the class.  *See, e.g., Odrick,* 2012 WL 6019495 at *7.  Thus far, administrative costs have amounted to $26,874.09 with the remaining $18,125.91 to include additional processing, website maintenance and disbursements of the Settlement benefits.  (Wall Decl. ¶ 11.)  The Court therefore concludes that the administrative costs amounting to $37,411 have been reasonably incurred for the benefit of the Class and **GRANTS** Plaintiff's motion for administrative costs.

### 4. Class Counsel's Request for an Incentive Award

Plaintiff requests that the Court approve an incentive payment in the amount of $2,500 to be awarded to Gayla Shelby for service as the named Plaintiff in this action. (Friedman Decl. II ¶¶ 37-38.)  Incentive awards are fairly typical in class action settlements.  *Rodriguez*, 563 F.3d at 958.  They seek to recognize the work done by the named Plaintiff on behalf of the class.  *Id.*  In determining whether an incentive award is reasonable, the Courts will consider the following factors: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, several factors support Class counsel's request for an incentive award. Gayla Shelby provided documentation and details regarding the facts of the cases, met with the attorneys for initial consultation, participated in calls regarding the attorney's fact-finding efforts, assisted with written discovery responses, remained available by

23

telephone for the mediation, and submitted declarations in support of the motion for both preliminary and final approval, attorneys' fees, costs, and incentive payment. (Dkt. No. 37-3, Declaration of Gayla Shelby in Support of Plaintiff's Amended Motion for Final Approval ("Shelby Decl.") ¶¶ 3-4.)  Furthermore, there appears to be no conflict of interest between the named Plaintiff and the Class.  (*Id.* at ¶ 6.)  The Court therefore concludes that the incentive award amounting to $2,500 has been reasonably incurred and **GRANTS** Plaintiff's motion.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for class certification and final approval of the class settlement (Dkt. No. 37).  The Court also **GRANTS** Plaintiff's motion for fees (Dkt. No. 35), including:

1. Plaintiff's request for attorneys' fees in the amount of $114,250.00,
2. Plaintiff's request for reimbursement of litigation costs in the amount of $4,903.56,
3. Plaintiff's request for reimbursement of administrative costs in the amount of $37,411.00, and
4. Plaintiff's request for an incentive award in the amount of $2,500.00.

**IT IS SO ORDERED.**

Dated:  August 2, 2017         _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE